IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:24-cr-141 |
| | ) | |
| SIEMENS ENERGY, INC. | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

### THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

SIEMENS ENERGY, INC. ("SIEMENS"), a global industrial manufacturing conglomerate, knowingly used stolen confidential competitor information of two other companies, General Electric Company (hereafter "GE") and Mitsubishi Heavy Industries, Ltd. (hereafter, "MHI"), to cheat on a competitive bid to build a $500 million gas power plant. SIEMENS accepted responsibility by pleading guilty to a felony offense, agreeing to pay a $104 million criminal penalty, and agreeing to a 3-year term of organizational probation — all under Fed. R. Crim. P. 11(c)(1)(C). The United States respectfully submits that the terms set forth in the plea agreement, which include a Guidelines range fine, are sufficient but no greater than necessary to meet the purposes of 18 U.S.C. § 3553(a).

## I.  PROCEDURAL HISTORY AND PRESENTENCE REPORT

On September 30, 2024, the President and CEO of SIEMENS appeared before the Court as a corporate representative and pled guilty on behalf of SIEMENS to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The maximum penalty for this offense is a 5-year term of organizational probation, a $400 special assessment, and a fine of up to twice the gross

gain or loss. The Court has scheduled sentencing for December 5, 2024. The Presentence

Investigation Report ("PSR") reflects that the defendant's applicable Guidelines fine range is

$104 million to $208 million, with a maximum fine of $130 million. *See* ECF No. 17 (PSR)

¶ 100. The United States has no objections or corrections to the PSR. The Probation Office

correctly applied the following Guidelines provisions, which have garnered no defense

objections:

*Offense Level and Base Fine Computation:*

(1)  The base offense level is 7 pursuant to § 2B1.1(a)(1). PSR ¶ 91.

(2)  The defendant received a 24-level increase for intended losses between $65 million

and $150 million. *Id.* ¶ 92.

(3)  The defendant received a 2-level increase for sophisticated means pursuant to

§ 2B1.1(b)(10)(C). *Id.* ¶ 93.

(4)  The defendant received a 2-level increase for misappropriating a trade secret that the

defendant knew or intended to be transmitted outside the United States pursuant to

§ 2B1.1(b)(14)(A). *Id.* ¶ 94.

The offense level of 35 corresponds with a base fine of $65 million pursuant to

§ 8C2.4(a).

*Culpability Score, Fine Multiplier, and Guidelines Range Computation:*

(1)  The base culpability score is 5 pursuant to § 8C2.5(a). PSR ¶ 97.

(2)  The defendant received a 5-level increase for being an organization with more than

5,000 employees and having high-level personnel participating in the criminal

misconduct pursuant to § 8C2.5(b)(1)(A)(i). *Id.* ¶ 98.

(3) The defendant received a 2-level decrease for cooperating with the government's

investigation and accepting responsibility pursuant to § 8C2.5(g)(2). *Id.* ¶ 99.

The fine multiplier corresponding to a culpability score of 8 is 1.6 to 3.2 times the base

fine pursuant to § 8C2.6, resulting in a penalty fine range of $104 million to $208 million.

\* \* \*

The United States respectfully requests that the Court adopt the terms set forth in the plea

agreement and sentence SIEMENS to 3 years' organizational probation and a $104 million

criminal penalty.

## II.     ARGUMENT IN SUPPORT OF RECOMMENDED SENTENCE

The Supreme Court has declared, "[a]s a matter of administration and to secure

nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

*Gall v. United States*, 552 U.S. 38, 41 (2007). This Court, therefore, "must first calculate the

Guidelines range, and then consider what sentence is appropriate for the individual defendant in

light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the

former with reference to the latter." *Nelson v. United States*, 555 U.S. 350, 351 (2009). When the

court, in consideration of the Section 3553 factors, imposes a non-Guidelines sentence, it must

give serious consideration to the extent of the deviation and provide an explanation "to allow for

meaningful appellate review and to promote the perception of fair sentencing." *United States v.*

*Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011) (internal quotation marks omitted).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the

nature and circumstances of the offense as well as the history and characteristics of the

defendant. 18 U.S.C. § 3553(a)(1). Additional factors outlined in section 3553(a)(2) include the

need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to

provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to

3

protect the public from further crimes of the defendant, and to provide the defendant with needed

education or vocational training, medical care, or other corrective treatment in the most effective

manner. 18 U.S.C. § 3553(a)(2); *United States v. Shortt*, 485 F.3d 243, 247 (4th Cir. 2007)

(noting that Subsection (a)(2) of Section 3553 includes "factors that a court must consider in

determining a particular sentence").

In all, the 18 U.S.C. § 3553(a) factors call for the sentence set forth in the plea agreement.

Such a sentence is sufficient but not greater than necessary to comply with the purposes of 18

U.S.C. § 3553(a).

### A.  Nature and Circumstances of the Offense

#### i.  Background and Factual Statement

In 2019, Dominion Energy, Inc., a Virginia-based utility company, sought to build a

power plant in Chesterfield, Virginia costing over $500 million. PSR ¶ 33. Termed a "peaker"

power plant, this Dominion project was specifically meant to alleviate electrical grid load at

times of peak electrical usage, improving overall grid resiliency and the availability of

electricity. Dominion opened a competitive, closed bidding process to solicit proposals from

qualified companies to bid on the project. To ensure the integrity of the bidding process, in

advance of these bids, Dominion executed separate reciprocal non-disclosure agreements

("NDAs") with each company bidding for work, restricting the use and disclosure of confidential

and proprietary information. *Id.* ¶ 34. On May 10, 2019, three companies submitted confidential

bids for the work: GE, MHI, and SIEMENS. *Id.* ¶ 39.

Thereafter, on multiple occasions, at least three individuals at SIEMENS (Executive Vice

President of Sales for Power Generation and Head of Sales for North America John Gibson,

Regional Sales Manager Mehran Sharifi, and Regional Account Manager Michael Hillen) in

combination with the Director of Generation System Planning at Dominion (Theodore S. Fasca),

conspired to misappropriate confidential information of GE and MHI to illicitly benefit

SIEMENS in their efforts to win the Dominion work.[1]

The same day that Dominion received these bids, co-defendant Hillen, who was part of

SIEMENS's sales team, called co-defendant Fasca to inquire into "the numbers" of GE and

MHI's bids to ascertain whether SIEMENS's bid was competitive. *Id.* ¶ 44. Thereafter, Fasca

provided Hillen with confidential information constituting GE and MHI's bid amounts. *Id.* ¶ 46.

Thereafter, on May 23, 2019, at Hillen's request, Fasca emailed documents containing

confidential information of GE and MHI to Hillen. *Id.* ¶ 47. To conceal the illicit nature of this

misappropriation of GE and MHI information, Fasca sent the files from his Dominion email

address to his personal Google address and subsequently from this Google email address to

Hillen's wife's Hotmail address. *Id.* Hillen then forwarded these emails along to his email

address at SIEMENS, after which Hillen strategically disseminated the confidential information

to Mehran Sharifi. *Id.*

Sharifi, who was better positioned than Hillen to know what to do with the confidential

information, then sent an email to Gibson with an analysis of the confidential information.

Sharifi noted that GE had a "Capital advantage" (*i.e.*, more competitive price on capital

equipment) based on the latest bid and recommended "provid[ing] Dominion [with a] further

price reduction." *Id.* ¶ 49. Noting the analysis, Gibson stated in an email on May 25, 2019, "On a

pure $/kw [dollar per kilowatt metric], [GE] are just lower. We may need a minor price move. I

---

[1] These other co-conspirators have all pled guilty in the same matter and have been sentenced to active terms of incarceration. *See United States v. Hillen*, Case No. 3:23-cr-120 (E.D. Va.); *United States v. Sharifi*, Case No. 3:24-cr-20 (E.D. Va.); *United States v. Fasca*, Case No. 3:23-cr-87 (E.D. Va.); *United States v. Gibson*, Case No. 3:23-cr-137 (E.D. Va.).

know we were stressed on the financials but a 6 unit [turbine project] is big and I hate to lose this one." *Id.* In the ensuing days, Gibson corresponded with the Chief Executive Officer of Power Generation at SIEMENS's then-parent company and other SIEMENS leaders to obtain approvals from SIEMENS's then-parent company in Germany to submit a revised offer predicated on the improperly-obtained confidential information. *Id.* ¶¶ 50-52. Thereafter, on May 30, 2019, SIEMENS submitted a lowered bid. *Id.* The same day, Sharifi sent a text message to Gibson stating, "Just wanted to thank you for your support and help. . . Very much appreciated." Gibson responded, "We need to win this. I have promised it." *Id.* ¶ 53. Even after this rebid, SIEMENS continued to improperly receive competitor confidential information via co-defendants Fasca and Hillen. *Id.* ¶¶ 54-56.

SIEMENS did not just try to make use of the improperly obtained confidential information on the Dominion project; SIEMENS also sought to use the information for the advantage of SIEMENS in other bids against the same competitors. For example, Gibson sent certain confidential information he received to other SIEMENS employees within SIEMENS's business intelligence unit, stating: "We really need to understand and dissect this to support us on FPL peakers…Please review with [other SIEMENS employees], then you guys come meet with me…Do not forward this and keep this within a small circle."[2]

SIEMENS's own compliance program first uncovered the wrongdoing and disclosed the same wrongdoing to GE, MHI, and Dominion. *Id.* ¶ 68. When confronted by law enforcement, SIEMENS cooperated with the law enforcement investigation, providing relevant non-privileged facts known to it. *Id.* Since the misconduct, SIEMENS has also undertaken remedial efforts, including the development and implementation of additional compliance and training programs.

---

[2] "FPL Peakers" referred to a separate bid for a separate utility, Florida Power and Lights. Both SIEMENS and GE bid for that work. PSR ¶ 55 n.6..

*Id.* SIEMENS retained an independent compliance assessment firm to evaluate the compliance and internal control policies of the defendant; the firm found that at present, the defendant's compliance and internal controls reduce risk of recurrence of misconduct. *Id.* ¶¶ 68, 83-85.

\* \* \*

In all, SIEMENS's conduct was serious and compromised the integrity of the bid process for a critical infrastructure utility project worth over $500 million. The nature and circumstances of the offense support the recommended sentence.

### B.  History and Characteristics of the Defendant

Though SIEMENS ENERGY, INC. has no criminal history, at the time the offense was committed, SIEMENS ENERGY, INC. was a subsidiary of Siemens AG, a German conglomerate. (Siemens AG spun off the energy component of its business in 2020.) Siemens AG and affiliates of SIEMENS ENERGY, INC. under the Siemens AG umbrella at the time the misconduct took place did have criminal histories, including: (1) a 2008 guilty plea for violations of the Foreign Corrupt Practices Act (PSR ¶ 71); (2) a 2013 deferred prosecution agreement with the New York County District Attorney's Office for misrepresentations made in bids to obtain $234 million in contracts with the City of New York (*id.* ¶ 72); and (3) a civil False Claims Act settlement based on misrepresentations to the Defense Supply Center for the sale of medical imaging equipment (*id.* ¶ 73). The history and characteristics of SIEMENS support the recommended sentence.

### C.  Need for the Sentence Imposed to Afford Adequate Deterrence

The need for general deterrence animates this prosecution. *See, e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionally minimized."). That is particularly true in the case of fraud cases, which

are difficult to detect, investigate, and prosecute. *See, e.g.*, *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crime are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotation marks omitted).

General deterrence is achieved with a felony guilty plea paired with a 9-figure fine, sending a strong message to other corporate actors contemplating similar misconduct. (Further general deterrence is also achieved through parallel prosecutions of the associated individual co-defendants – a senior corporate executive, director, and other employees.) This is not the first time and will not be the last time that corporate actors cross the threshold into criminal activity to garner improper competitive advantage. The strong punishment reflected in the recommended sentence sends an unequivocal message to corporate actors who operate in competitive marketplaces: Cheating and stealing to get ahead garner stiff sanctions. While the United States may not detect every instance of wrongdoing, corporate bad actors who are caught will be punished heavily.

### D.  Need for the Sentence Imposed to Reflect the Seriousness of the Offense

The Court must fashion a sentence to address a key collateral consequence of this criminal activity: Loss of confidence in the integrity of competitive marketplaces. With each piece of confidential information that SIEMENS improperly used, SIEMENS trampled on the trust that GE and MHI placed in Dominion – a trust in the integrity of the bidding process. GE and MHI submitted their bids to Dominion relying on their confidential information and trade secrets being held secure by Dominion employees. (This reliance is evidenced by NDAs executed in advance of GE and MHI sending confidential information to Dominion.) If market participants are not able to rely on promises that their confidential information and trade secrets would be held secure, such participants may be reluctant to enter into economic transactions. The

8

strong sentence recommended by the United States, in contrast, restores a measure of trust in the competitive marketplace by sending a message to market participants that the United States takes market integrity seriously and that market participants can rely on promises made to keep confidential information safe.

### E.  Need for the Sentence Imposed to Avoid Disparity

The fact that SIEMENS's crimes involve bid documents instead of hand-to-hands and back alleys should not allow the company to escape the often-significant consequences imposed on less sophisticated defendants. *See United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir.1999) ("Business criminals are not to be treated more leniently than members of the 'criminal class' just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity. . . Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.").

\* \* \*

## III.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court impose a term of 3 years' probation and a $104 million criminal fine, which constitute a sentence sufficient but no greater than necessary to satisfy the purpose of sentencing set forth in 18 U.S.C. § 3553.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:          /s/ *Avi Panth*
Avi Panth
Virginia Bar No. 92450
Kenneth R. Simon, Jr.
Virginia Bar No. 87998
Brian J. Samuels
Virginia Bar No. 65898
Assistant United States Attorneys
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Office Number: (804) 819-5400
Fax Number: (804) 771-2316
E-Mail: Avishek.Panth@usdoj.gov
E-Mail: Kenneth.Simon2@usdoj.gov
E-Mail: Brian.Samuels@usdoj.gov